Lingham v. Eggleston.

Henry Lingham and another v. Chauncey Eggleston, Jr.

*Sales: Title: Intent.* The question whether a sale is completed, or only executory, where no question arises under the statute of frauds and the rights of creditors do not intervene, is one to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold, and the circumstances surrounding the sale.

*Sales: Delivery: Title: Price: Measurement: Intent.* Where the goods sold are sufficiently designated so that no question can arise as to the thing intended, it is not absolutely essential there should be a delivery, or that the goods should be in deliverable condition, or that the quantity or quality, when the price depends upon either or both, should be determined; these are circumstances indicating intent, but are not conclusive.

*Sales: Price: Quantity and quality: Presumption: Condition precedent.* But where any thing is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods, as by weighing, testing or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things, in the absence of any thing indicating a contrary intent, is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in a state in which they may and ought to be accepted.

*Sales: Lumber: Inspection: Title: Transfer: Presumption.* In this case, which involved the question of the sale of certain lumber specifically designated, but not actually delivered, under a contract making the price to depend upon an inspection and separation of qualities and measurement of quantities to be thereafter made, it was held that something of importance remained to be done by the vendor to ascertain the price to be paid, and that this was, in the absence of any thing showing a contrary intent, presumptively a condition precedent to the transference of title.

*Heard April 17 and 18.     Decided July 11.*

Error to Genesee Circuit.

*Edward J. Bissell* and *F. A. Baker,* for plaintiffs in error.

*Oscar Adams* and *L. Walker,* for defendant in error.

COOLEY, J.

The contest in this case relates to a sale of lumber by Eggleston to Lingham and Osborne, and the question involved is, whether the contract between the parties amounted to a sale *in presenti* and passed the title, or merely to an executory contract of sale. The lumber, subsequent to the contract and before actual delivery to the

purchasers, was accidentally destroyed by fire, and the purchasers now refuse to pay for it, on the ground that it never became their property. The action was brought by Eggleston for goods bargained and sold, and in the court below he recovered judgment.

There appears to be very little dispute about the facts. The lumber was piled in Eggleston's mill yard at Birch Run. In September, 1871, he sold his mill to a Mr. Thayer, reserving the right to leave the lumber in the yard until he disposed of it. To most of the lumber the plaintiff had an exclusive title; but there were four or five piles which he owned jointly with one Robinson. The whole amount was from 200,000 to 250,000, excluding Robinson's share in the four or five piles. The defendants went to the mill yard September 23d, 1871, and proposed to buy the lumber. Plaintiff went through the yard with them, pointed out the several piles, and designated those in which Robinson had an undivided interest, and also some piles of shingles which they proposed to take with the lumber. After examining the whole to their satisfaction, the defendants agreed upon a purchase, and the following written contract was entered into:

"Flint, September 23d, 1871. Lingham and Osborne bought from C. Eggleston this day, all the pine lumber on his yard at Birch Run at the following prices: For all common, eleven dollars, and to include all better at the same price; and for all culls, five dollars and fifty cents per M., to be paid for as follows: Five hundred dollars to-day, and five hundred dollars on the 10th of October next; the balance, one-half on 1st day of January, A. D. 1872, and the rest on the first day of February following; said lumber to be delivered by said Eggleston on board of cars when requested by said Lingham and Osborne, which shall not be later than 10th of November next. Also some shingles at two dollars per M. for No. 2 and four dollars for No. 1.

(Signed) "LINGHAM & OSBORNE.
CHAUNCEY EGGLESTON, Jr."

The five hundred dollars mentioned in this contract to be paid at the time of its execution was paid. A few days later defendants went to the mill yard in plaintiff's absence and loaded two cars with the lumber. He returned before they had taken them away, and helped them count the pieces on the cars, but left them to measure them afterwards. At this time the lumber in the piles had not been assorted, inspected or measured. There was disagreement between the parties as to whether they had fixed upon a person to inspect the lumber; the defendants claiming that such was the fact. On the ninth day of October, 1871, Lingham met plaintiff on the cars at Flint, and told him the fires were raging near Birch Run; that the lumber yard was safe yet, but that there were eight cars standing on the side track, and he had better go up to Birch Run and load what were there, and get what lumber he could away; plaintiff took the first train for the purpose, and while on the train the train boy gave him the following note from Lingham:

"Holly. Mr. Eggleston: You may load, say ten thousand, if you think best, on each car, and we can have it inspected as it is unloaded. I will try and come up tomorrow.

When plaintiff reached Birch Run the fire was raging all about the mill, and that, with all the lumber in the yard, was soon totally destroyed by fire. Such are the undisputed facts in the case; and upon these the jury were instructed in substance that a completed contract of sale was made out, and the plaintiff was entitled to recover the purchase price.

Where no question arises under the statute of frauds, and the rights of creditors do not intervene, the question whether a sale is completed or only executory, must usually be determined upon the intent of the parties to be ascertained from their contract, the situation of the thing sold, and the circumstances surrounding the sale. The parties

may settle this by the express words of their contract, but if they fail to do so, we must determine from their acts whether the sale is complete. If the goods sold are sufficiently designated so that no question can arise as to the thing intended, it is not absolutely essential that there should be a delivery, or that the goods should be in deliverable condition, or that the quantity or quality, when the price depends upon either or both, should be determined. All these are circumstances having an important bearing when we are seeking to arrive at the intention of the parties, but no one of them, nor all combined, are conclusive.

In *Blackburn on Sales, 120,* the rule on this subject is very clearly and correctly stated as follows: The question, the author says, is "a question depending upon the construction of the agreement; for the law professes to carry into effect the intention of the parties as appearing from the agreement, and to transfer the property when such is the intention of the agreement; not before. In this, as in other cases, the parties are apt to express their intentions obscurely; very often because the circumstances rendering the point of importance are not present to their minds, so that they really had no intention to express. The consequence is, that without absolutely losing sight of the fundamental point to be ascertained, the courts have adopted certain rules of construction which, in their nature, are more or less technical. Some of them seem very well fitted to aid the court in discovering the intention of the parties; the substantial sense of others may be questioned. The parties do not contemplate a bargain and sale till the specific goods on which their contract is to attach are agreed upon. Where the goods are ascertained, the parties are taken to contemplate an immediate bargain and sale of the goods, unless there be something to indicate an intention to postpone the transference of the property till the fulfillment of any conditions; and when by the agreement the seller is to do any thing to the goods for the purpose of putting them into a deliverable shape, or when any thing is

to be done to them to ascertain the price, it is presumed that the parties mean to make the performance of those things a condition precedent to the transfer of the property. But as these are only rules for the construction of the agreement, they must yield to any thing in the agreement which clearly shows a contrary intention.    The parties may lawfully agree to an immediate transference of the property in the goods, although the seller is to do many things to them before they are to be delivered; and, on the other hand, they may agree to postpone the vesting of the property till after the fulfillment of any conditions they please." In *Benjamin on Sales, 214, 215,* the same doctrine is laid down, and it is said that "nothing prevents the parties from agreeing that the property in a specific thing sold and ready for delivery is not to pass till certain conditions are accomplished, or that the property shall pass in a thing which remains in the vendor's possession, and is not ready for delivery, as an unfinished ship, or which has not yet been weighed or measured, as a cargo of corn in bulk, sold at a certain price per pound or per bushel." And see *Ib., 221, et seq.*

Upon this general principle there is no difficulty in reconciling most of the reported decisions. And even without express words to that effect, a contract has often been held to be a completed sale, where many circumstances were wanting and many things to be done by one or both the parties to fix conclusively the sum to be paid or to determine some other fact material to their respective rights.

The most important fact indicative of an intent that title shall pass is generally that of delivery.    If the goods be completely delivered to the purchaser, it is usually very strong if not conclusive evidence of intent that the property shall vest in him and be at his risk, notwithstanding weighing, measuring, inspection, or some other act is to be done afterwards.    A striking case in illustration is that of *Young v. Mathews, Law R., 2 Exch., 127,* where a large quantity of bricks was purchased in kilns.    Only a part of

them were burned, and none of them were counted out from the rest; but they were paid for, and such delivery as in the nature of the case was practicable was made.    The court held that the question was one of intention merely, and that it was evident the parties intended the title to pass.    To the same effect are *Woods v. Russell, 5 B. & Ald., 942; Riddle v. Varnum, 20 Pick., 280; Bates v. Conklin, 10 Wend., 389; Olyphant v. Baker, 5 Denio, 379; Bogy v. Rhodes, 4 Greene (Iowa), 133; Crofoot v. Bennett, 2 N. Y., 258; Cunningham v. Ashbrook, 20 Mo., 553.*

So, if the goods are specified, and all that was to be done by the vendor in respect thereto has been done, the title may pass, though the quantity and quality, and consequently the price to be paid, are still to be determined by the vendee.—*Turley v. Bates, 2 H. & C., 200; Kohl v. Lindley, 39 Ill., 195.*

And even if something is to be done by the vendor, but only when directed by the vendee, and for his convenience, as, for instance, to load the goods upon a vessel for transportation, the property may pass by the contract of sale notwithstanding.—*Whitcomb v. Whitney, 24 Mich., 486; Terry v. Wheeler, 25 N. Y., 520.*

But the authorities are too numerous and too uniform to justify citation, which hold that where any thing is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods, as by weighing, testing or measuring them, where the price is to depend upon the quantity or quality of the goods; the performance of those things is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they may and ought to be accepted.

A learned author from whom we have already quoted, says of this, that "the rule seems to be somewhat hastily adopted from the civil law, without adverting to the great

distinction made by the civilians between a sale for a cer-
tain price in money, and an exchange for any thing else.
The English law makes no such distinction, but, as it
seems, has adopted the rule of the civil law, which seems
to have no foundation except in the distinction.    In gener-
al the weighing, etc., must, in the nature of things, be
intended to be done before the buyer takes possession
of the goods;  but that is quite a different thing from
intending it to be done before the vesting of the property;
and as it must in general be intended that both the parties
shall concur in the act of weighing, when the price is to
depend upon the weight, there seems little reason why, in
cases in which the specific goods are agreed upon, it should
be supposed to be the intention of the parties to render the
delay of that act, in which the buyer is to concur, benefi-
cial to him.    Whilst the price remains unascertained, the
sale is clearly not for a certain sum of money, and there-
fore does not come within the civilian's definition of a per-
fect sale, transferring the risk and gain of the thing sold;
but the English law does not require that the consideration
for a bargain and sale should be in moneys numbered, pro-
vided they be of value."    But the same writer, with can-
dor and justice, adds, that this rule is now "firmly estab-
lished as English law."—*Blackburn on Sales, 153.*    And see
*Turley v. Bates, 2 H. & C., 200,* in which this passage is
quoted and the conclusion treated as unquestionable.

What then are the facts in this case from which the
intent of the parties is to be inferred?    The lumber was
specifically designated, so that no question of identity could
arise.    It was not delivered, and the vendor was to place
it on board the cars, if desired to do so within a time spec-
ified;  but as in any event the vendees were to take it at
Birch Run, and it was optional with them to load it on
the cars themselves or to have the vendor do it for them,
and they had no right to require that he should do so after
the day named, we think the circumstance that actual
delivery was not made is not one of very much importance

in the present discussion.    What is of more importance is,. that neither the quality nor the quantity was determined; and the evidence in the case shows that as to these there might very well be, and actually were, great differences of opinion.    The price to be paid was consequently not ascer- tained, and could not be until the qualities were separated and measurement had.

It will be observed that the contract did not provide how or by whom the inspection and measurement should be made.    It was certainly not the right of either party to bind the other party by an inspection and measurement of his own; it was the right of both to participate, and we must suppose such was the intent, unless something clearly appears in the case to show the contrary.    Nothing of that. nature appears in the record except the disputed evidence of defendants, that a person was agreed upon for the pur- pose.    The note sent by Lingham to Eggleston proposing that the eight cars be loaded and that the vendees make the proper inspection, was a mere proposition, and never acted upon.    It is very evident Eggleston was under no obligation to trust this important transaction exclusively to the vendees, and we have no right to infer that he would have done so.    It follows that something of high impor- tance remained to be done by the vendor to ascertain the price to be paid; and as this, under all the authorities, was presumptively a condition precedent to the transference of the title—nothing to the contrary appearing—the court should have so instructed the jury.    The instructions given, were in substance directly to the contrary.

It follows that the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.