THOMAS, Respondent, vs. TOLFORD and another, Appellants.

*November 4 — November 22, 1887.*

*Sale of chattels: When· title passes.*

Plaintiff sold all the lumber at his mill (except culls which were to be separated) at a certain price, to be delivered on the cars. The vendees allowed him to make certain sales and to sell to his local trade for their benefit. Some work was to· be done upon the lumber, as directed by the vendees, before it was shipped. The vendees disclaimed all liability in connection with the lumber until it should be loaded on the cars and consigned to them, and the plaintiff assumed all risk from fire until it was so loaded. *Held*, that the sale was executory and did not pass the title.

APPEAL from the Circuit Court for *Clark* County.

The facts are sufficiently stated in the opinion. The defendants appealed from a judgment in favor of the plaintiff.

For the appellants there was a brief by *Bardeen, Mylrea & Marchetti,* attorneys, and *Jas. O'Neill,* of counsel, and oral argument by *Mr. Bardeen.* They contended, *inter alia,* that the property passes at once on a sale, if such is the intent, though the seller is afterwards to make a delivery of the goods. Benj. on Sales, sec. 329; *Lingham v. Eggleston,* 27 Mich. 324; *Boynton v. Veazie,* 24 Me. 286. Although something remains to be done to ascertain the quantity or exact amount of the price to be paid, the title passes, especially when it is apparent that it was the intention of the vendor to transfer the title and of the vendee to accept it. *Sewell v. Eaton,* 6 Wis. 490; *Sanborn v. Hunt,* 10 id. 436; *Morrow v. Reed,* 30 id. 81; *Pike v. Vaughn,* 39 id. 499; *Fletcher v. Ingram,* 46 id. 191; *Gill v. Benjamin,* 64 id. 362; *Godfrey v. Germain,* 24 id. 410; *Kimberly v. Patchin,* 19 N. Y. 330; *Crofoot v. Bennett,* 2 id. 258; *Terry v. Wheeler,* 25 id. 520; *Macomber v. Parker,* 13 Pick. 175; *Riddle v. Varnum,* 20 id. 280; *Groat v. Gile,* 51 N. Y. 431.

Thomas vs. Tolford and another.

For the respondent the cause was submitted on the brief of *Sturdevant & Sturdevant* and *Chas. F. Grow*. They argued that the contract must be held executory (1) because the property was not definitely specified. Until the culls were taken out, the lumber intended to be sold remained unidentified and the amount unknown. 1 Benj. on Sales (Corbin's ed.), secs. 364, 459; *Galloway v. Week*, 54 Wis. 604; *Hoffman v. King*, 58 id. 314; *Lingham v. Eggleston*, 27 Mich. 324. (2) Because the lumber was not delivered at the place agreed upon. 1 Benj. on Sales, sec. 325. (3) Because payment had not been made and was not to be made until the lumber was delivered. *Cole v. Berry*, 42 N. J. Law, 308; *Terry v. Wheeler*, 25 N. Y. 520. (4) Because the lumber was not dressed or surfaced in the manner provided by the contract, and was not in that state in which the vendees were bound to receive it. Blackburn on Sales, 151–2; 1 Benj. on Sales, sec. 364; *Acraman v. Morrice*, 8 C. B. 449; *Smith v. Sparkman*, 55 Miss. 649; *Foster v. Ropes*, 111 Mass. 10, 15; *Elgee Cotton Cases*, 22 Wall. 180, 193. (5) Because the vendees were to be under no liability for the lumber until it was loaded on cars and consigned, and this was never done.

COLE, C. J. This is a controversy about a quantity of lumber. The plaintiff claims it as his property, and alleges that it was wrongfully taken from him by the defendants, and converted to their use. The defendants admit the taking, but justify that the property was seized under an execution as the property of Deatherage & Ewart, the defendants in the execution. The case was tried without a jury, and the trial court found upon the evidence that, at the time the property was seized under the execution, it was not the property of the judgment debtors, but belonged to the plaintiff. The question which we have to determine is: Does the evidence show that this was the fact, or that there

was such an executed contract of sale as to vest the title to the lumber in the judgment debtors, contrary to the decision of the court below?

These facts are admitted: That about the 1st of September, 1885, Ewart, of the firm of Deatherage & Ewart, came to the plaintiff's mill at Colby, and made a purchase of a quantity of lumber. The plaintiff says he sold him all the lumber he had at the time in his yard, with the exception of culls, amounting in quantity to more than 1,000,000 feet. Then three letters passed between the parties relating to this sale and which it is admitted contain the contract which the parties made. These letters are too long to be quoted at length, and we shall only refer to certain sentences in them which seem to bear upon the question before us. There is certainly language in them which sustains the contention of the defendants' counsel that there was a complete executed sale and purchase of the lumber, so as to pass the title thereof to the vendees. In the first letter, dated September 1, 1885, written the plaintiff by Ewart, from Chippewa Falls, he says: "I now confirm the purchase made of you yesterday for Deatherage & Ewart of your stock of lumber, culls out, at $9.50 per M., f. o. b. cars at your station, with the following additional charges for working." Then follows a description of the lumber, and an estimate of the quantity of stock, "as near as may be." The next day the plaintiff answered this letter saying, among other things: "I find no difference in our understanding." A third letter, dated Kansas City, September 9th, was written by the vendees to the plaintiff. In the testimony the letters f. o. b. are explained to mean "free on board cars." In both the letters written the plaintiff by the vendees, directions are given about sales from this stock of lumber which the plaintiff was to make in his local trade and to Chicago parties, and the average of such sales was to be charged or credited to them according as the same

was more or less than the purchase price which they agreed to pay.   These are the principal circumstances relied on to show an intention to vest the title of the lumber in the vendees.

But against these acts and declarations as to the sale there is other language which must be considered.   In the first letter written by Ewart, he says: "We are to have no liability in connection with this stock until it has been loaded on cars by you and consigned to us.   All risk of fire is assumed by you while the stock remains in your yard." To this the plaintiff says: "The risk is mine until I obtain evidence of the R. R. that I have consigned it to you.   I hope I shall not lose it in that way, nor you either.   But in case I would, I wish you agree not to try to cause me to replace it, because you know I cannot do that without another loss."   This language shows quite conclusively that the parties did not intend the title to pass until the lumber was loaded upon the cars and consigned to the vendees, because it is agreed that the vendees should have no liability for the lumber until this had been done.   If the property had been lost and destroyed by fire while in the plaintiff's mill-yard, the loss would clearly have been his.   The language is perfectly plain and distinct upon that point.

It is said that the parties were contracting only with reference to the risk by fire while the lumber was in the yard of the vendor; but the language is not so qualified, while it is undoubtedly true that loss by fire was one risk which the parties had in mind.   But, according to our understanding of the letters, the intention was that the vendees assumed no liability, or rather incurred no responsibility, for the property, until it had been loaded on the cars; in other words, that the vendor was to retain the ownership until this was done.   There are some other circumstances which tend to support the conclusion that the sale was an executory one, and that the title did not pass when the contract

was made. There were culls intermixed in the lumber, which were to be separated and thrown out of the stock. There were also stipulations made as to "working" or dressing the lumber before it was shipped. These circumstances are not conclusive as to the nature of the sale, but they are entitled to weight when trying to ascertain the understanding of the parties as to when the title would pass to the vendees.

There was testimony outside the letters, but it was not important, and affords little aid in determining the question whether the contract amounted to a sale *in præsenti* and passed the title, or was merely an executory contract of sale. While the parties have failed to express their intention as clearly as they might have done, yet, upon all the evidence bearing upon the question, we agree in the conclusion reached by the learned court below,— that the lumber when seized on the execution was not the property of the vendees, or judgment debtors, but was the property of the plaintiff. The directions which were given him by the vendees as to sales are not inconsistent with that view. The vendees had contracted for the purchase of all the lumber in the yard, culls out. This is an admitted fact. They had the right therefore that all should be delivered upon the contract; but they were willing to allow the plaintiff to make sales from the stock in his local trade and to Chicago parties, at certain prices, as they would have the benefit of such sales when above the prices which they had agreed to pay. But when the vendees say, as they do in effect, "We are to have no liability nor incur any responsibility in connection with the stock until it is loaded on the cars;" and the vendor replies, in substance, "The risk is mine until I obtain evidence of the railroad company that I have placed it on the cars, consigned to you; and if the lumber is lost or destroyed before that is done, I want you to agree not to insist upon my replacing it, because this I cannot do

without another loss," — but one possible inference can be made as to the intention of the parties and the nature of the contract. It was not a sale where title or ownership of the property passed to the purchasers. No money was paid when the contract was made. Payment was to be made for the stock on the 1st of January following, except as to $1,000 or $1,500 at an earlier day if the plaintiff should request. The vendees in Kansas City were to give directions from time to time about shipments and dressing the lumber. The case most nearly resembling this in its facts to which we were referred is *Lingham v. Eggleston*, 27 Mich. 324, where Mr. Justice COOLEY gives a very instructive opinion, which strongly bears upon many questions discussed in the case at bar. We do not enter upon a discussion of the legal principles applicable to the case, as they are plain, if we are right in our construction of the letters that the parties only contemplated making an executory agreement in them. That being our conclusion from the language used, it follows that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.