THOMAS R. VAN WERT v. THE OLNEY & JUDSON GROCER COMPANY.

*Sale—Passing of title.*

The owner of a stock of groceries, estimated to be worth from $700 to $800, agreed to exchange it for certain city lots, the price of which was fixed at $750. The lot-owner was to assume the payment of debts of the grocer to the amount of $175, and the purchase price of the lots was to be paid by applying on the contract for their sale and conveyance the amount of the invoice of the groceries, thereafter to be taken, less the $175, and the remainder in annual payments of $50 each. A bill of sale of the groceries was executed and delivered to the lot-owner, who executed the contract for the sale and conveyance of the lots, which was left with the scrivener at the request of both parties. The key of the store was delivered to the lot-owner, and it was agreed that the store should be kept open for business, and that the amount of the sales of groceries made without being inventoried should be added to the amount of the invoice. The lot-owner took possession of the store, and commenced doing business. One of the creditors, whose debt had been assumed, demanded payment of the debt, and was informed by the lot-owner that he would pay it, but needed a little time, whereupon the creditor secured a chattel mortgage on the groceries to secure the debt from the original owner, and in the absence of the lot-owner took possession of the store, and afterwards sold the groceries on the mortgage. And in affirming the action of the trial court in directing a verdict in favor of the lot-owner, who sued the creditor in trover for the value of the groceries, it is held:

a—That the execution and delivery of the land contract was

as complete a payment for the groceries as a money considera-
tion actually paid would have been.

b—That, under the undisputed facts of the case, the title had
passed when the mortgage was given, as the key to the store
had been delivered, and the lot-owner placed in the absolute
possession and control of the goods, with the understanding on
the part of both parties that the title had passed, and the only
remaining act to complete the transaction was to determine by
an inventory how much should be indorsed as paid upon the
land contract as the value of the goods sold.

Error to Kent.   (Judkins, J., presiding.)   Submitted on
briefs April 12, 1894.   Decided May 18, 1894.

Trover.   Defendant brings error.   Affirmed.   The facts
are stated in the opinion.

*C. O. Smedley* (*Benn M. Corwin*, of counsel), for appellant.

*Smiley, Smith & Stevens,* for plaintiff.

GRANT, J.   Plaintiff was the owner of several lots in
Holland, Mich.   A Mrs. Merryman was the owner of a stock
of groceries in Grand Rapids.   Her husband carried on
the business as her agent.   An agreement was entered into
for the exchange of the grocery stock and business for certain
of these lots.   The price of the lots was fixed at $750.   Mr.
Merryman considered the groceries worth between $700
and $800.   Plaintiff offered $600, without taking an inven-
tory.   Merryman preferred the inventory.   Plaintiff and
Merryman went to Holland to examine the lots.   Upon
their return the papers were executed, consisting of a land
contract and a bill of sale.   The land contract specified
that the amount of the invoice of the stock of groceries,
less the amount of debts thereon, to the amount of $175,
should be applied upon the contract, the balance to be paid
$50 yearly, with interest.   The bill of sale was delivered
to plaintiff, who placed it on file in the office of the city
clerk on the following day.   The contract was left with

one Lozier, who drew the papers, at the request of both parties. The papers were drawn Friday evening at Merryman's house. Merryman had obtained the key from his clerk, who usually kept it over night, for the evident purpose of delivering it to plaintiff upon the execution of the papers. After the execution of the papers, Merryman delivered the key to plaintiff, who, with Merryman, Lozier, and others, went to the store, opened it, and the entire party was treated over the consummation of the trade. The inventory was to be taken the following day. Plaintiff agreed, upon the completion of the inventory, to deed to Merryman as many lots as there were even hundred dollars in the invoice, after deducting $175. It was agreed that the store should be kept open for business, and that the amount of the sales of goods made without being inventoried should be added to the amount of the invoice. The following morning plaintiff opened the store, swept it, and arranged things in readiness for trade, purchased some berries of a farmer, and hired Mr. Merryman's former clerk. Mr. Merryman was present in the store in the forenoon, as was his right under the arrangement, and assisted to wait on customers when occasion required.

Mr. Merryman was indebted to the defendant in the sum of $172, which was one of the accounts plaintiff agreed to pay. A representative of the defendant went to the store Saturday forenoon, and conversed with plaintiff about his account. Plaintiff said he would go to the defendant's store at noon and see about the matter. He did so. Plaintiff informed defendant that he would pay the account, but would need a little time. Defendant demanded a certain amount in cash and a short time for the balance. Plaintiff left the store without coming to any arrangement with the defendant. On his return to his own store he there found an agent of the defendant and its attorney. A further conversation occurred in regard to the account, but

no agreement was reached. Merryman and the defendant's agent and attorney then left the store together. They went to the house of Mrs. Merryman, who executed a chattel mortgage to the defendant upon the stock of goods, which was immediately filed with the city clerk. Later in the afternoon plaintiff temporarily left the store. On his return he found the door barred, and the defendant in possession under the chattel mortgage. The stock was sold under the chattel mortgage, and thereupon plaintiff instituted this action of trover to recover its value. The court directed a verdict for the plaintiff for the value of the goods, less the debt which was due from Mrs. Merryman to the defendant.

The defendant insists (1) that plaintiff was not a *bona fide* purchaser, and (2) that the title to the stock of goods had not passed to plaintiff.

1. There is no evidence that either Mrs. Merryman or the plaintiff intended to defraud her creditors. The sale was perfectly legitimate, and was fully completed. The execution and delivery of the land contract was as complete a payment for the goods as a money consideration actually paid would have been.

2. Under the undisputed facts in the case, the title had passed. The key had been delivered, and the plaintiff placed in the absolute possession and control, with the understanding on the part of both that the title had passed. The only remaining act to complete the transaction was to determine by an inventory how much should be indorsed as paid upon the land contract as the value of the goods sold. *Lingham v. Eggleston*, 27 Mich. 324; *Ducey Lumber Co. v. Lane*, 58 Id. 521; *Brewer v. Salt Association*, 47 Id. 526; *Wagar v. Railroad Co.*, 79 Id. 648; *Lobdell v. Horton*, 71 Id. 681.

Judgment affirmed.

The other Justices concurred.