PEOPLE, *for use of* HOLMES, *v.* SHEEHAN.

| 118 | 539 |
|-----|-----|
| 128 | 304 |
| 118 | 539 |
| e139 | 29 |
| 118 | 539 |
| 142 | ¹475 |
| 118 | 539 |
| 146 | ¹ 56 |

1. SALE—PASSING OF TITLE—DELIVERY.
   Where one person has agreed to sell and another to buy a specific and designated article, the law, in the absence of any manifestation of a contrary intention, presumes a sale to have been effected; delivery not being essential to the passing of title as between the parties and their privies.

2. SAME—CONSTRUCTION OF CONTRACT.
   Under an agreement whereby S., a contractor, was to select curbstone at H.'s yard, "and when the curbstone was thus picked out, and delivered to S., it should belong to S., and H. would have nothing more to do with it," title passed when the stone was selected at the yard, although H. was to transport it when requested.

3. SAME—DELIVERY ON SUNDAY—EFFECT ON CONTRACT.
   The right to recover the purchase price of goods sold upon a week-day is not affected by the fact that delivery was made on Sunday.

4. PAVING CONTRACT—CONTRACTOR'S BOND—LIABILITY OF SURETIES.
   Sureties upon the bond of a paving contractor are not liable for material purchased for the improvement, but subsequently rejected, and sold to other parties.

5. SAME—ACTIONS—PARTIES DEFENDANT.
   Dealers in paving materials, who have supplied contractors with stone used for distinct improvements, in respect to which separate bonds were given, cannot, in an action to recover a balance due, join all the sureties upon the different bonds, but should bring separate actions for the balance due on each improvement against those liable therefor.

6. SAME—APPLICATION OF PAYMENTS.
   Payments made upon an account for materials furnished to a paving contractor for use in several improvements, in the absence of any application by the parties, will be applied to the charges in the order of their date.

Error to Wayne; Carpenter, J.   Submitted October 18, 1898.   Decided November 15, 1898.

*Assumpsit* by the people of the State of Michigan, for the use and benefit of Frank B. Holmes and Albert R. Strachan, copartners, against Thomas P. Sheehan, Robert C. Sheehan, John Archer, and John C. McDonald, upon a statutory bond. From a judgment for plaintiffs for less than the amount claimed, both parties bring error. Modified.

*Warner, Codd & Warner*, for plaintiffs.

*George H. Prentis*, for defendants.

HOOKER, J. The findings of fact filed by the circuit judge state that the defendants Sheehan contracted with the city of Detroit to furnish materials and repave three streets, one of which was Randolph street. The other defendants were sureties upon the statutory bond given upon the Randolph-street contract according to the provisions of Act No. 94 of the Public Acts of 1883, as amended by Act No. 45 of the Public Acts of 1885. The plaintiffs furnished materials, viz., curbstone, for all of these jobs, amounting in the aggregate to $1,182.18. Payments were made amounting to $674.83, leaving a balance of $507.35. All of the stone was charged upon one account, and the payments were so credited, the last credit being August 7th. On or about August 5th the plaintiffs had an interview with the Sheehans, in which they said that, owing to what they considered an unfair rejection of stone, they would furnish no more, unless the Sheehans would select such material at plaintiffs' yard, and when thus picked out, and delivered to Sheehan & Co., it should belong to them, and the plaintiffs would have nothing more to do with it. This was agreed to, and upon a secular day the Sheehans examined at the yard 629 feet 8 inches of curb, which was delivered to them upon Randolph street. The judge found that this became the property of the Sheehans, whether used or not, and that, of this quantity of stone, 334 feet at 58 cents per foot, worth $193.72, was delivered on Randolph street,

at the request of the Sheehans, upon Sunday, August 8, 1897. Of this quantity delivered upon Sunday, the Sheehans sold to other parties an amount worth $34.39; it being curb that was rejected by the inspectors. It is inferred that the remainder was used upon the street. The learned circuit judge found, as conclusions of law, that the defendants Archer and McDonald are not liable for the curb delivered on Sunday, amounting to $193.72, nor for the curb not used on Randolph street, amounting to $30.42; also, that the payments should be applied to the charges in the order of time; and he rendered judgment for the plaintiffs for $283.16, with interest at 6 per cent. from September 1, 1897. Exceptions were taken to the several findings of law. Both parties appealed.

Counsel for the plaintiffs contend that the selection of the stone passed the title from them to the Sheehans. If this is so, their liability is not affected by the fact that the stone was drawn Sunday. The finding shows that the material in question was furnished under the agreement of August 5th, which grew out of a refusal on their part to furnish any more material unless the defendants Sheehan would select it at the yard. It is a general rule that, when one has agreed to sell and the other to buy a specific and designated article, the title passes to the purchaser at once, unless the terms of the contract indicate the intention to have been otherwise, and delivery is not essential to the passing of title as between the parties and their privies. This rule is supported by innumerable cases, a long list of which will be found in 21 Am. & Eng. Enc. Law, 476, note 1,—among them, three of our own cases, viz.: *Davis* v. *Ransom*, 4 Mich. 238; *Whitcomb* v. *Whitney*, 24 Mich. 486; *Byles* v. *Colier*, 54 Mich. 1. See, also, *Lingham* v. *Eggleston*, 27 Mich. 324; *Blodgett* v. *Hovey*, 91 Mich. 574; *Kuppenheimer* v. *Wertheimer*, 107 Mich. 79 (61 Am. St. Rep. 317).

Where there is no manifestation of intention, the law presumes a sale, and the immediate transfer of title, if the specific thing is agreed on, and it is ready for immediate

delivery. See 21 Am. & Eng. Enc. Law, 482, and cases
cited in note 1; *Lingham* v. *Eggleston, supra; Kuppen-
heimer* v. *Wertheimer, supra.* This presumption will
be overcome if a different intention can be deduced
from the contract, and in this case counsel asserts that
the finding shows a different intention. The language is,
"Sheehan & Co. should select the material at their yard,
and when the curbstone was thus picked out, and delivered
to Sheehan & Co., it should belong to Sheehan & Co..
and Holmes, Strachan & Co. would have nothing more
to do with it." Were the last clause of the sentence
omitted, it would be plain that the parties understood that
the title was to pass upon selection, which is coupled with
delivery in a manner indicating such intent. But coun-
sel argues that the word "delivery" cannot have been used
in that sense, because the language implies that after de-
livery the plaintiffs were not to have anything more to do
with the stone, which would be inconsistent with an agree-
ment that they should deliver it on Randolph street.
Were we disposed to be technical, we might say that there
is nothing in this contract, as stated in the finding, to in-
dicate an obligation upon the part of the plaintiffs to
transport the stone; but it appears that they did so, and
we therefore assume that it was understood that they
should transport it when requested. The question is not
free from difficulty. As several of the cases cited hold,
the mere agreement to do this would not prevent the title
from passing; and we think a fair construction of the sen-
tence quoted to be that after selection the title should pass
to the Sheehans, who would take it subject to the vicissi-
tudes of inspection, with which the plaintiffs should have
nothing to do. Taking this view of the case, the Sheehans
became liable for the purchase price when the stone was
selected, as the sale was then complete; and this liability
was not affected by the subsequent transportation of the
stone upon Sunday, to do which was no part of the con-
tract of sale. This conclusion necessitates a reversal of
the case, but we will consider the other questions raised.

We are of the opinion that the bondsmen cannot be held liable for material which, though purchased for this job on Randolph street, was rejected, and sold to other parties.

Counsel for defendants also alleges error upon the application of payments, but cites no authority which prevents the application of payments by the parties to the contract under the usual rule, or, if they fail to specify how all payments shall be applied, justifies any other rule than that followed by the learned circuit judge.

A further point is made, viz., that this was a running account between the Sheehans and the plaintiffs, and that it could not be split for the purpose of bringing separate actions. We understand counsel to claim that the bondsmen upon all three contracts should have been joined in one action for the entire balance of the account. Such an action could not have been maintained, as there was no joint liability between the sureties upon different bonds. This is not an action upon the contract for stone, but is based upon the bond, and is authorized by the statute.

The finding shows that the curb furnished for Randolph street amounted to $853.01, upon which there was unpaid the sum of $507.35. From this amount the rejected curb, amounting to $64.81, should be deducted, leaving a balance of $442.54, for which sum, with interest at 6 per cent. from the 1st day of September, 1897, judgment will be entered in this court, with costs to the plaintiffs.

The other Justices concurred.