JULIUS KESSLER & CO: v. VEIO.

SALES—OFFER AND ACCEPTANCE—EXECUTED CONTRACT.
An offer and acceptance by letter for 10 barrels of whiskey, followed by a segregation of them in the seller's bonded warehouse and the issuance of warehouse receipts and invoice therefor, constitute an executed contract which transfers title to the whole quantity, though only two barrels are shipped to the buyer at the time of the sale.

| 142 | 471 |
| 145 | 698 |
| f145 | 699 |
| 142 | 471 |
| f146 | 384 |

Error to Cheboygan; Shepherd, J.   Submitted October 6, 1905.   (Docket No. 21.)   Decided December 30, 1905.

Assumpsit by Julius Kessler & Company against Joseph Veio and Fred Veio, copartners as Veio Bros., for goods sold and delivered.   There was judgment for plain-

tiff on a verdict directed by the court for less than the amount claimed, and it brings error.   Reversed.

Plaintiff is an Illinois corporation, with its headquarters in Chicago. It owns United States bonded distillery warehouses at several points in Kentucky. Defendants are retail liquor dealers in Cheboygan, Mich. Negotiation for the purchase and sale of some liquor was begun by the defendants writing a letter to the plaintiff on January 29, 1903, in which they said:

"We are in the market for ten barrels whiskey. If you can furnish us satisfactory prices, we will give you the business. Kindly quote us prices on five bbls. W. H. McBrayer Spring 1896, five bbls. Sam Clay Spring 1896. * * * If you will make the Spring 1896 W. H. McBrayer at $1.25, and the Sam Clay Spring 1896 at 65 cents, we will take five barrels of each, and you can ship one of each at once, and the balance we will order as we want it. * * * We would want them reduced to 95 proof. We always pay cash thirty days, less discount. Look us up in Bradstreet."

To this plaintiff replied January 31st, as follows:

"We have filled the order for the Sam Clay, as well as for the W. H. McBrayer, at your own figures, and beg to hand you herewith invoice for the ten barrels, amounting to $448.32. You may deduct four per cent. from this amount if you remit within thirty days. We enclose also warehouse receipts Nos. 7,304 and 8,371 for four barrels Sam Clay and four barrels W. H. McBrayer's Cedar Brook, respectively. We have ordered one barrel of each tax paid and shipped to you reduced to 95 per cent., and will draw for the government tax after shipment is made. * * * Please note that you will have no warehouse charges to pay on these goods prior to January 31, 1903; in other words, the warehouse charges begin only with this date."

Plaintiff sent this letter, the warehouse receipts, and invoices by registered mail, and they were received by the defendants February 2d. The warehouse receipts read as follows:

"Received and stored in our United States bonded distillery warehouse of our Paris Distillery No. 77, situated in Paris, in the 7th district of Kentucky, five (5) barrels Sam Clay whiskey, to be held by us on storage and on account of and subject to the order of Veio Bros., deliverable only upon payment of the United States taxes and all other taxes and charges and storage on said whiskey at the rate of (5) cents per barrel per month from date of entry and payment of the purchase price of said whiskey or of the notes given therefor and upon the return of this receipt properly indorsed and the written order of the holder thereof. Loss or damage by the elements, fire, riots, accidents, evaporation, leakage, shrinkage, or natural decay shall be at the risk of the owner or holder of this receipt. Storage, State and county tax paid up to date of sale."

The other receipt was the same, except that it described another warehouse and the other brand of whiskey. Upon the back of each receipt was indorsed the following:

"Address all correspondence in regard to shipment of the within-described whiskey to Julius Kessler & Co. (Inc.), Distiller, Ashland Block, Chicago."

The invoice described the same 10 barrels of whiskey mentioned in the warehouse receipts and identified them in the same manner. The two barrels were withdrawn from the warehouse in the usual manner and shipped. Plaintiff made application in due form to the collector of internal revenue to reduce the whiskey to 95 per cent. proof, as directed by defendants. Plaintiff drew a draft upon the defendants for the amount of the tax advanced by plaintiff, which the defendants paid upon receipt of the two barrels. On February 26, 1903, defendants wrote plaintiff that they had just opened the two barrels of whiskey, and upon gauging the same found that they were only 80 per cent. proof, instead of 95, stating they could not use either package, asked plaintiff to send draft for amount paid, including freight, and further stating that they would return the goods and warehouse certificates and consider their business relations closed. Upon regauging,

defendants found that their gauger had made a mistake, and that the whiskey was found to be on a second gauging 90 and 92½ per cent. A small sample was drawn and sent to the plaintiff at its request, and it had it regauged, and wrote a letter to defendants, dated March 10th, acknowledging that one of the samples fell below 95 proof. Plaintiff afterwards requested the Michigan collector of internal revenue, in the district where the defendants lived, to regauge the whiskey. This was done, and he reported that it was 95 proof. This report was sent to the defendants, but was ignored by them. Considerable correspondence passed between the parties which is immaterial to here state. Defendants kept and used the two barrels. About May 25th they returned the warehouse receipts and a check in payment for the two barrels, but declined any liability for the other eight barrels. The receipts and check were promptly returned by plaintiff to defendants, and this suit instituted to recover the price of the 10 barrels. The court declined, as requested, to direct a verdict for plaintiff for the entire amount, but directed a verdict for plaintiff for the price of the two barrels used by the defendants, and plaintiff appeals.

*Frost & Sprague*, for appellant.

*C. S. Reilley*, for appellees.

GRANT, J. (*after stating the facts*). Plaintiff insists that the contract was executed, and title passed. Defendants insist that the contract was executory, and that no title passed except to the goods shipped. Defendants' letter plainly contemplated the purchase of ten barrels of whiskey, not two barrels. The price per gallon for ten barrels might be less than the price for two barrels. Plaintiff accepted defendants' offer as to price, quality, quantity, and terms of payment, and in its reply gave its construction to defendants' order, viz., that it was to be a sale of ten barrels at so much per barrel, cash payment 30 days, less discount. In compliance with this order plain-

tiff set aside in United States bonded warehouses the ten barrels ordered, numbered them, marked them, issued warehouse receipts therefor, made out an invoice, and sent the same to defendants.  The warehouse receipts also notified them that loss or damage by the elements, etc., was at the risk of defendants, or of the holder of the receipts, should they transfer them.  Defendants evidently understood that the sale was subject to payment by them of the government tax.  The evidence shows that the only person authorized to gauge the whiskey to the proof asked is a duly appointed United States gauger, and that the two barrels shipped were certified by said gauger as reduced to 95 proof.  Defendants' action in retaining these warehouse receipts, the invoice, and the letter accompanying them about 24 days, without any objection, is a ratification of the contract as stated in the plaintiff's letter and the accompanying documents.  Defendants could take it all at one shipment, or they were at liberty to leave it in the bonded warehouses, to be ordered shipped as they desired.  The indorsement on the back of the receipts to whom and where to address orders for shipment has no tendency to show that it was not the intention to pass title.  The only act left for the defendants to do was to order shipments as they desired, and the only act left for the plaintiff to do was to ship as ordered.  In order to get the goods which were left in possession of the plaintiff by the agreement of the parties, an order was necessary from the defendants.  The same order, and the same compliance therewith, would have been required if this indorsement had not been made.  The delivery of the warehouse receipts was a sufficient delivery to pass title. Actual delivery is not essential to transfer title to property sold.  *Rail* v. *Lumber Co.*, 47 Minn. 422; *People* v. *Sheehan*, 118 Mich. 539.

Though the sale may be for cash, cash payment may be waived, in which case the title will pass.  *Scudder* v. *Bradbury*, 106 Mass. 422; *Fishback* v. *Van Dusen*, 33 Minn. 111.  Where the agreement is on the part of one to

sell and the other to buy a specified article, "the title passes to the purchaser at once, unless the terms of the contract indicate the intention to have been otherwise, and delivery is not essential to the passing of title as between the parties and their privies." *People* v. *Sheehan*, supra. The law will carry into effect the intention of the parties as appearing from their agreement. *Lingham* v. *Eggleston*, 27 Mich. 329. The letter and the documents accompanying it were a notice to the defendants that the property had been set aside and designated as their property, and subject to their control. They could have sold and transferred the warehouse receipts, and thereby conveyed a valid title to the property therein described. *Merchants' & Manufacturers' Bank of Detroit* v. *Hibbard,* 48 Mich. 123; *First Nat. Bank of Green Bay* v. *Dearborn,* 115 Mass. 219; *Second Nat. Bank of Toledo* v. *Walbridge,* 19 Ohio St. 419; 30 Am. & Eng. Enc. Law (2d Ed.), p. 71.

We think that the contract was executed, and that the title had passed.

Judgment reversed, and new trial ordered.

MOORE, C. J., and CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred.