CARVER *v.* SHERMAN.

1. SALES—EXECUTED SALE—CONTRACTS—TITLE.
Under the terms of a contract for the sale of a quantity of apples, at a stated price, to be shipped within fifteen days and paid for when loaded, weights and grades to be guaranteed by plaintiff, after defendant had accepted and paid for the greater part of the apples, title passed as to the remainder of the property which plaintiff had packed in barrels and ten-

dered to defendant; so that damage to the fruit by frost thereafter was not plaintiff's loss, and she was entitled to recover the difference between the price at which she resold and the contract price.

2. SAME—INSPECTION.

Though inspection of the apples had not been made by defendant, nothing further remained for the seller to do except deliver them, and title passed at the time of executing the contract.

3. SAME—APPEAL AND ERROR.

Thus any possible error in the charge of the court to the jury upon the duty of plaintiff to protect the apples, being cured by the verdict for plaintiff, who was, in fact, entitled to a directed verdict, was not prejudicial.

Error to Allegan; Padgham, J. Submitted June 19, 1912. (Docket No. 66.) Decided October 2, 1912.

Assumpsit by Ella Carver against Ernest F. Sherman for the price of certain merchandise. Judgment for plaintiff. Defendant brings error. Affirmed.

*O. S. Cross*, for appellant.

*Charles Thew*, for appellee.

BROOKE, J. Plaintiff made a contract to sell her apple crop to defendant. Defendant first made an oral offer some time in October, giving plaintiff until the following Saturday night to accept. The offer was accepted by plaintiff in a telephone conversation.

Following the telephone conversation, defendant wrote a letter to plaintiff, as follows:

"Mrs. CARVER,
    "Hopkins, Michigan,
"*Dear Madam:*
"I herewith hand you confirmation of your apples bought of you October 29, at 5:50 p. m. as per your guarantee of packing them, over the 'phone. Packing to be strictly as represented, as you wish to establish a reputation for packing; same to be loaded as soon as possible, at the following prices: $3.50 per barrel for No. 1, Bald-

wins, Starks and Spies; $2.80 per barrel for No. 2, Baldwins, Starks, and Spies; $1.80 per barrel for No. 3, Baldwins, Starks and Spies.

"Yours respectfully,
" E. F. SHERMAN."  .

The "confirmation" referred to in and accompanying the foregoing reads:

"ALLEGAN, MICHIGAN, Nov. 2, 1910.
" Mrs. E. CARVER,
" Hopkins, Michigan.

" I confirm purchase of you this date by 'phone about three cars of apples at $3.50, $2.80 and $1.80 f. o. b. your station, weights and grades guaranteed by you, shipment within fifteen days.   I will send check for value of car less ten per cent. to cover any contingencies, balance to be remitted when car has been unloaded.   Remarks: Enclosed find check for one hundred dollars.   If the above is not in accordance with your understanding, wire or 'phone at once.

" E. F. SHERMAN, per G. N."

Upon receipt of this letter and confirmation, plaintiff testifies that she called defendant by telephone and objected to the use of the word "unloaded" in the confirmation, and that defendant told her the word should have been "loaded."

Two days later defendant wrote plaintiff another letter:

"November 4th, 1910.

" Mrs. E. CARVER,
" Hopkins, Michigan.
" *Dear Madam:*

" Since talking with you over the 'phone concerning the price of apples, I have thought different of the proposition you made then than I did at the time I was talking with you over the 'phone.   Now I want to do what is right and fair, and will do it, and I won't abuse you. When I was over there I had inquiries for both bulk and barrel apples in car load lots at prices that would have netted me a profit, and also up to last Saturday night, when you 'phoned me and we talked it over, that you would take my offer.   That evening I quoted your bunch out and on Monday, by return mail and wire, from differ-

ent markets that they were all decidedly lower, and I did not secure a single order. Now, had you accepted my proposition when there, I could have sold them and had them out of the country, and now I will be obliged to wait for the reaction of the markets before I can care for them. It may be tomorrow or it may be in a week, before I can procure an order. Your suggestion was for me to send you $400.00 as payment on same, or pay for each car as loaded. I told you I would do so. Upon further consideration I have decided that I will pay you for them as they are loaded out, as per your request, but I could not advance that much. Your proposition was too one-sided, but I will pay for them as they are loaded. Trusting that this will be satisfactory, beg to remain,

"Yours truly,
"E. F. SHERMAN."

This contract provides for delivery at Hopkins Station within 15 days. If the letter of November 4th is considered as a modification as to time of delivery, to which plaintiff assented, it may be said that the time for delivery was extended one week. At the time the contract was made, the apples were all picked, packed in barrels, and ready for delivery. Nothing remained to be done by plaintiff, except to deliver them at the station when requested by defendant.

Under the contract evidenced by these writings, plaintiff delivered to defendant, and defendant accepted and paid for, all the apples covered by the contract, except 105 barrels of No. 1 quality. These deliveries were made, from time to time, as requested by defendant during the month of November; the last being on November 29th.

The record shows that plaintiff repeatedly urged defendant to take the apples away, as they were stored in an open shed, and, as the season progressed, were liable to become frozen. This actually did occur on December 5th. Plaintiff seems to have made every reasonable effort to prevent the apples from freezing by boarding up the shed and protecting it with quilts and carpets. Two stoves were put up in the shed, and fires were kept up. In spite of these precautions, however, the 105 barrels remaining

were, to some extent, frozen on the night of December 5th. On December 10th 50 of the 105 barrels were delivered at a car furnished by defendant. Upon inspection, he found that they were frosted, asked plaintiff to take them back, and refused to accept the other 55 barrels. Plaintiff thereupon, after notice to defendant, sold the 55 barrels at public auction. They brought $2.35 per barrel. Plaintiff then brought suit. Defendant, after suit was brought, paid plaintiff for the 50 barrels at the rate of $2.35 per barrel. She recovered a judgment for $146.25; that sum representing the difference between $2.35 and $3.50 per barrel upon 105 barrels, together with some $16 expended in caring for and making the resale of the 55 barrels.

Defendant's counsel makes the following claim:

"From the above writing and conversation, we conclude that the contract was that the defendant bargained to purchase about three car loads of plaintiff's apples which would grade No. 1, 2, and 3, to be paid for when they should be delivered by plaintiff f. o. b. Hopkins, and inspected as to grade and accepted by defendant, delivery to be made within a reasonable time after the 29th day of October, 1910, the apples to remain the property of the plaintiff until the same were delivered, inspected, accepted, and paid for by defendant."

We are unable to agree with this construction of the contract. Both parties rely upon the case of *Lingham* v. *Eggleston*, 27 Mich. 324, which, since its appearance, has been regarded as a leading case upon the question of when title passes. It was there held, and the same doctrine was enunciated by the same learned judge in the case of *Byles* v. *Colier*, 54 Mich. 1 (19 N. W. 565):

"That the question whether a sale is completed or only executory is usually one to be determined from the intent of the parties, as gathered from their contract, the situation of the thing sold, and the circumstances surrounding the sale; that where the goods sold are designated so that no question can arise as to the thing intended, it is not absolutely essential that there should be a delivery, or that the goods should be in deliverable condition, or that the

quantity or quality, when the price depends on either or both, should be determined; these being circumstances indicating intent, but not conclusive; but that where anything is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods, as by weighing, testing, or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things, in the absence of anything indicating a contrary intent, is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they appear to be in a state in which they may be and ought to be accepted "—citing cases.

In the case from which this quotation was taken, the title was held to have passed, although a further inspection was necessary, in order to determine how much remained to be paid. In the case at bar, the defendant, at the time of making the contract, had made a partial payment, and had upon two occasions visited the orchard of plaintiff during the packing operations. Moreover, by the terms of the contract, "weights and grades" were guaranteed by the plaintiff. Nothing further was to be done by the vendor in respect to the property, except to deliver it to the vendee at his convenience, when so directed. *Lingham* v. *Eggleston*, *supra*. See, also, *Sandler* v. *Bresnaham*, 53 Mich. 567 (19 N. W. 188); *H. M. Tyler Lumber Co.* v. *Charlton*, 128 Mich. 299 (87 N. W. 268, 55 L. R. A. 301, 92 Am. St. Rep. 452); *Julius Kessler & Co.* v. *Veio*, 142 Mich. 471 (106 N. W. 73).

Under the terms of this contract and the acts of the parties thereunder, which are not disputed, we are of opinion that the learned circuit judge should have directed the jury that the title to the property passed to the defendant at the time the contract was made. The reason for the delay in shipment clearly appears from the testimony of defendant. He said:

"Up until November 20th, prices were very low. I could have sold these apples at any time during the month of November and the first part of December, if I had want-

ed to take the low price. My idea in holding the apples was to get a better price for them."

The question of whether plaintiff used reasonable diligence to prevent the fruit from freezing seems to have been presented to the jury under proper instructions, although other portions of the charge might indicate a practical direction in favor of plaintiff. Inasmuch as upon the record the plaintiff was entitled to a directed verdict, the errors, if any, contained in the charge, are without prejudice.

Error is assigned upon the admission of certain testimony and the rejection of certain other testimony. These assignments have been examined, but are found to be without merit.

The judgment is affirmed.

MOORE, C. J., and STEERE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred.