RICHARDSON LUMBER CO. *v.* HOEY.

1. SALES—PASSING OF TITLE—INTENT.

In determining the question as to when the title to property passes, the intention of the parties is the controlling consideration.

2. SAME—UNIFORM SALES ACT.

A contract for the sale of a certain number of ties at a specified price, where nothing remained to be done by the seller before they could be loaded and delivered, was an unconditional contract to sell specific goods in a deliverable state, and under Rule 1 of the uniform sales act. (3 Comp. Laws 1915, § 11850) title passed to the buyer at the time the contract was made.

3. SAME—CONTRACTS—RESCISSION—MUTUAL MISTAKE—BUYER HAS RIGHT TO RESCIND WHERE GOODS THREATENED WITH DESTRUCTION WHEN CONTRACT MADE.

If ties were contracted to be sold in the belief and with the understanding by both parties that there was no imminent danger from fire, and if there was in fact imminent danger, and they were liable to be destroyed before the buyers could, by reasonable diligence, move them, they would have a right to rescind the contract; and if, after knowledge of the facts, the buyers had no time or opportunity to rescind before the ties were destroyed by the fire which threatened them at the time the contract was made, they would not be liable, in an action on the contract for the purchase price.

Error to Alpena; Emerick (Frank), J. Submitted January 26, 1922. (Docket No. 49.) Decided October 2, 1922. Rehearing denied November 2, 1922.

Assumpsit by the Richardson Lumber Company against William T. Hoey and another, doing business as the Western Cedar & Lumber Company, for the

price of certain ties.   Judgment for plaintiff.   Defendants bring error.   Reversed.

*I. S. Canfield,* for appellants.

*Edward S. Clark* and *Frank T. Hinks,* for appellee.

McDONALD, J.   On the 16th day of September, 1916, the parties hereto made the following contract for the sale and purchase of a quantity of ties:

'Alpena, Michigan,                September 16, 1916.
"WESTERN CEDAR & LUMBER COMPANY,
            "City.
*"Gentlemen:*   We will sell you the cedar ties we now have on the Boyce property, Essexville, estimated to be 11,500 at 42c on the ground as they are.   This to be for all—there are to be no rejects.   You are to pay us in cash as soon as the ties have been counted. We have made this in duplicate and if you wish to purchase the same kindly sign your acceptance to one copy and return it to us, when we will notify Mr. MacDonald that you have purchased the same.
            "Yours very truly,
            "RICHARDSON LUMBER COMPANY,
                    "By R. S. RICHARDSON.
"Accepted this————day of Sept., 1916.
   "By WESTERN CEDAR & LUMBER COMPANY,
   "By W. T. HOEY."

It is the claim of the defendants that when the acceptance was signed Mr. Richardson said to Mr. Hoey: "You give me check for 11,500 ties and you can load the ties any time you want to."   To which Mr. Hoey replied that he did not buy ties that way, but that he would make arrangements with plaintiff's Bay City office to count the ties and pay for them at Bay City; that Mr. Richardson then said: "The ties are ours until you pay for them;" and that to this Mr. Hoey replied; "All right, I will take care of that. I wouldn't touch the ties until I counted them and paid for them."

On the 19th of September, defendants began to load and move the ties. They had taken out 1,721 when the remainder, not yet counted, were destroyed by fire. The defendant tendered plaintiff payment for 1,721 ties at 42c in full settlement of their obligations under the contract. The tender was refused and this suit brought to recover for the entire quantity of ties named in the contract. Plaintiff had judgment for the full amount of its claim.

Defendants insist on three defenses to the action:

*First.* That the contract did not pass the title, and that, therefore, their only obligation is for the ties actually delivered.

*Second.* That the plaintiff, with knowledge of the facts, fraudulently concealed from the defendants that the ties were located in a place where there was imminent danger from fire.

*Third.* That there was a mutual mistake of fact in regard to the dangerous location and the liability of the ties being destroyed by fire, or that there was a mistake of fact on the part of the defendants while the plaintiff had full knowledge of it.

There are 67 assignments of error, and while we have carefully considered all of them, we will not discuss those which appear to be plainly without merit. This includes assignments 1 to 8 inclusive, relating to the admission of evidence, and 10, 11, 12, 13, 38, 39, 40, and 41, relating to the refusal of the court to instruct the jury that Mr. Franks was not a member of the defendant company at the time of the transaction, and in permitting them to return a verdict against him.

A very material question in the case is that which relates to the circuit judge's construction of the contract as to the passing of title. The question is presented by assignments 15, 16, 17, 18, 19, 44, 45, 46 and 47. The court instructed the jury that the written contract when executed would pass title

of the property to the defendants unless there was a subsequent verbal agreement, as defendants claimed, that the title to the ties should remain in the plaintiff until they were counted and paid for. Whether such a verbal agreement was made, the court left the jury to determine. In determining the question as to when the title to property passes, the intention of the parties is the controlling consideration.

In *Cadillac Machine Co.* v. *Iron Co.*, 205 Mich. 107, it was said:

"The authorities, as well as the uniform sales act, are to the effect that the question as to when title to property passes is one of intention to be ascertained from the terms of the contract and from the circumstances of the case."

The uniform sales act (3 Comp. Laws 1915, § 11850), lays down certain rules by which to ascertain the intention of parties as to when title shall pass.

"Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

"RULE 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

"RULE 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them in a deliverable state, the title to the property does not pass until such thing be done."

In the case under consideration the contract was for the sale of specific goods and nothing remained to be done by the seller before they could be loaded and delivered. It was an unconditional contract to sell

specific goods in a deliverable state.    Applying rule 1 to these undisputed facts it would seem that the title to the ties passed to defendants at the time when the contract was made.

Regardless of the uniform sales act, the numerous decisions of this court have laid down certain controlling rules which, when applied to the facts in this case, justify the conclusion that this contract was complete and passed title to the property at the time it was made.    *Whitcomb* v. *Whitney,* 24 Mich. 486; *Adams Mining Co.* v. *Senter,* 26 Mich. 73; *Lingham* v. *Eggleston,* 27 Mich. 324; *Byles* v. *Colier,* 54 Mich. 1; *H. M. Tyler Lumber Co.* v. *Charlton,* 128 Mich. 299 (55 L. R. A. 301, 92 Am. St. Rep. 452) ; *Carver* v. *Sherman,* 172 Mich. 264; *Germain* v. *Loud,* 189 Mich. 38; *Cadillac Machine Co.* v. *Iron Co.,* 205 Mich. 107.    These cases adhere to the rule that where nothing remains to be done by the vendor to ascertain the identity, quantity or quality of the goods sold, where nothing further is necessary to put them in the condition provided by the terms of the contract, the title passes when the contract is made.    In the instant case, we have a contract where the identity, amount, quality, price and time of payment were definitely fixed and nothing remained to be done except to count the ties to see if they checked up with the number stated in the contract.

In *Carver* v. *Sherman, supra,* it was said: "Nothing further was to be done by the vendor in respect to the property, except to deliver it to the vendee at his convenience, when so directed;" and it was held that the court should have directed the jury that the title of the property passed to the defendant at the time the contract was made.

Again, in *Adams Mining Co.* v. *Senter, supra,* it was said:

"The whole property being identified and sold, at

a fixed price per foot, the process of ascertaining the amount was not essential to passing the title, as it might have been if less that the whole amount delivered was to be sold and separated by measurement. In that case, the measurement might be necessary to fix the identity of the property sold. But where all is sold, no such process is needed to pass title. The ascertainment of the price was a mere mathematical computation, involving no further action to bring the minds of the parties together."

To the same effect is 1 Mechem on Sales, §§ 496, 497.

The terms of the contract and circumstances of the case being undisputed, we think the court did not err in instructing the jury that they should find that the title to the ties passed at the time the contract was made, unless they found that there was a subsequent agreement by which the seller was to keep the title until they were counted and paid for.

It is urged that the court erred in his instructions to the jury with reference to defendants' claim of fraudulent concealment as to the dangerous location of the ties and the imminent danger from fire. We think that the instructions correctly stated the law applicable to this claim.

A more serious question is presented by the refusal of the circuit judge to submit to the jury defendants' claim of mutual mistake as to the danger from fire. The defendants claimed, and there was some testimony tending to support their claim, that, at the time the contract was made, fires were burning under the ground close to the place where the ties were piled, and shortly thereafter consumed them; that if this fact were unknown to the parties, that if they both believed that they were contracting for ties that were safe from fire and could be delivered, it was such a mutual mistake of fact as would avoid the contract. The circuit judge was of the opinion that the mistake

was not as to the identity or existence of the subject-matter of the contract, and, therefore, should not be submitted to the jury as a defense to the action. In this, I think, the court erred.

This is not a case of accident or something happening after the contract which destroyed the thing contracted for. If the defendants' claim be true, at the very time the contract was made, the fire was near the ties under ground, about to destroy them, thus making delivery within a reasonable time impossible. It was a present imminent danger which did, in fact, wipe out the subject-matter of the contract. If the fire were not present at the time but originated afterwards, of course, it would have nothing to do with the contract, and would not affect defendants' liability. But that is not the claim here. It was an existing fact which continued until the property was destroyed. That the ties were in a safe place and could be delivered was a material element of the contract; it was one of the inducements which led to it. They would not have made it if they had known of the danger. They were mutually mistaken, and if defendants' claim as to the facts be true, it was a mistake that went to the entire consideration of the contract. If there was any evidence to support this theory, and I think there was some, the defendants were entitled to have it submitted to the jury.

I think it must be held that if the ties were contracted to be sold in the belief and with the understanding, by both parties, that there was no imminent danger from fire, and if there was in fact imminent danger, and they were liable to be destroyed before the defendants could, by reasonable diligence, move them, the defendants would have a right to rescind the contract; and that if, after knowledge of the facts, the defendants had no time or opportunity to rescind before the ties were destroyed by the fire

which threatened them at the time the contract was made, defendants would not be liable except for the ties actually delivered.

This holding is in harmony with the principles enunciated in *Sherwood* v. *Walker*, 66 Mich. 568 (11 Am. St. Rep. 531), wherein it was said:

"But it must be considered as well settled that a party who has given an apparent consent to a contract of sale may refuse to execute it, or he may avoid it after it has been completed, if the assent was founded, or the contract made, upon the mistake of a material fact,—such as the subject-matter of the sale, the price, or some collateral fact materially inducing the agreement; and this can be done when the mistake is mutual."

The judgment of the circuit court will be reversed and a new trial granted, with costs to the defendants.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.