HUMPHREY R. WAGAR v. THE DETROIT, LANSING & NORTHERN RAILROAD COMPANY.

*Sale—Passing of title.*

No principle is more uniformly settled than that title passes by a sale of personal property, where such is the meaning of the parties, and it is equally well settled that, where nothing remains to be done by the vendor, title passes. *Lingham v. Eggleston,* 27 Mich. 324; *Wilkinson v. Holiday,* 33 Id. 386; *Haskell v. Ayres,* 35 Id. 89; *Grant v. Bank,* Id. 515; *Iron Cliffs Co. v. Buhl,* 42 Id. 86; *Carpenter v. Graham,* Id. 191; *Larkin v. Lumber Co.,* Id. 296.

So *held,* where the owners of 125,000 feet of mill culls, piled up in piles and so marked, but containing more or less other lumber, sold 100,000 feet of such culls for $550 *in cash,* the vendees agreeing to load them on the cars as soon as possible; and, in a suit between the vendees and subsequent purchasers of the vendors' entire property without notice of such prior sale, it is held that the title to the 100,000 feet of mill culls passed, and that the vendees could recover the same or their value in said suit.

Error to Ionia. (Smith, J.) Argued January 14, 1890. Decided April 11, 1890.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Lemuel & William Clute ( W. E. Hoyt,* of counsel), for appellant, contended for the doctrine stated in the opinion.

*McGarry & Ford ( W. W. Mitchel,* of counsel), for plaintiff, contended:

1. The arrangement in this case was a bargain for lumber yet to be inspected out of a larger quantity of various classes or grades, and was therefore an executory agreement, and not a completed sale; citing *Bank v. Crowley,* 24 Mich. 492; *Ortman*

*v. Green,* 26 Id. 209; *Lingham v. Eggleston,* 27 Id. 324; *Hahn v. Fredericks,* 30 Id. 225; *Gibbons v. Robinson,* 63 Id. 151.

CAMPBELL, J.   In this case the facts are found and rest chiefly on documents.   The only question in the case which is of any special importance is whether a sale of lumber made by W. F. & G. W. Turner to John J. Foster & Co. passed title to 100,000 feet of mill culls replevied in this suit.

On August 17, 1887, W. F. & G. W. Turner owned 125,000 feet of pine mill culls, piled up at Dixon's siding, in piles marked "Mill Culls," but containing more or less other lumber.   On that day the Turners sold to Foster & Co. by absolute bill of sale, and for payment made at the time, 100,000 feet of mill culls, at $5.50, to be loaded as soon as possible.   The sale was made at the purchasers' office in Greenville.

Two days thereafter George W. Turner sold to his brother, William F. Turner, his undivided half of their joint property, consisting of logs and miscellaneous lumbering property, including lumber piled at Dixon's siding, which included various grades of pine and some hemlock.

On August 26, 1887, W. F. Turner sold to plaintiff all the pine and hemlock lumber piled at Dixon's siding, and all the logs and lumber at Stroupe & Payne's mill, at Cedar Lake, in Kent county.   This was to be paid for at seven dollars a thousand for all grades above dead culls, deducting cost of manufacture and other expenses, including that of loading on the cars for shipment.   This was to be paid as certain notes matured against Turner at two banks named, and his remaining bank indebtedness. Plaintiff took such possession as was practicable.

On the night of September 5, Foster & Co. took away from the piles at Dixon's siding 112,945 feet, which

included 3,000 feet which had been sawed after their purchase. This whole amount is the property replevied.

It is not claimed that this extra 12,945 feet was the property of Foster & Co., and to that extent the plaintiff was entitled to recover. But it is claimed by defendants that the 100,000 feet belonged to Foster & Co.

It cannot be disputed that, if Foster & Co. owned 100,-000 feet of the lumber, plaintiff could not get any title to it by his purchase. He could only take what was the property of his vendor. *Tuttle v. White,* 46 Mich. 485 (9 N. W. Rep. 528).

Neither can it be claimed that if Foster & Co. ever got title to any lumber they lost it. The only question is whether their purchase was complete, or was a mere agreement to sell. No principle is more uniformly settled than that title passes by a sale of personal property, where such is the meaning of the acts of the parties; and it is equally well settled that, where nothing remains to be done by the vendor, title passes. *Lingham v. Eggleston,* 27 Mich. 324; *Wilkinson v. Holiday,* 33 Id. 386; *Haskell v. Ayres,* 35 Id. 89; *Grant v. Bank,* Id. 515; *Iron Cliffs Co. v. Buhl,* 42 Id. 86 (3 N. W. Rep. 269); *Carpenter v. Graham,* Id. 191 (3 N. W. Rep. 974); *Larkin v. Lumber Co.,* Id. 296 (3 N. W. Rep. 904).

All of these cases—which are but a small number of our own decisions—recognize these principles, and some of them are nearly, and some precisely, analogous. In *Lingham v. Eggleston* and *Wilkinson v. Holiday,* where title did not, or did not necessarily, pass, the decisions were based on grounds which distinctly recognized the distinctions named.

In *Haskell v. Ayres* it was held that a sale of all the merchantable timber on specified lands passed an immediate and complete title, and the merchantable character was a fact which was susceptible of proof, although this

quality was found in woods containing other timber, and it must of necessity be to some extent a matter of judgment.

In *Grant v. Bank* an agreement was made to convey to a trustee—

"All the merchantable long timber, not to exceed 20 per cent. of Norway, in the boom at East Tawas, and enough more to make up the quantity to one million of feet, at ten and a half dollars per thousand feet, the same to be rafted and delivered to said trustee, free of charges, when required, he furnishing the necessary chains for rafting the same. The sale and delivery in the boom to be made as soon as possible."

It was held in this case that a bill of sale and acceptance of order by the boom company passed the title at once, although there were several contingencies and difficulties as to identification, and that such subsequent expenses of rafting and towing as are chargeable to an owner became thereby chargeable to the trustee.

In *Iron Cliffs Co. v. Buhl,* when 2,000 tons of ore out of a larger mass were sold to purchasers, who paid for it in full, they were held subject to lose 300 tons, which the bailee failed to transport to them. It was held that, as the mass was of similar kind and character, it made no difference that the ore sold was to be taken from it when done by the vendees or their agents.

In *Carpenter v. Graham* a sale of a thousand barrels out of a larger number of several thousand passed title before severance, so as to prevail against a seizure under process.

In each of the latter cases it required the action of the vendee to identify the property sold, but the vendor had no further control to direct what should be taken.

It is impossible to distinguish these cases from the one before us; and, where our own decisions reach the case, it is not admissible to go beyond them. It is nevertheless

stated in Judge Holmes' note to 2 Kent, Comm. 492, and in Kerr's notes to Benjamin on Sales, § 398, that the prevailing American doctrine sustains the transfer of title to property to be taken by the purchaser from a larger mass.

If this doctrine is not true, it would follow that a sale to two different persons of 100,000 feet, in a lumber yard of 200,000 feet, would be of no avail against a subsequent sale of the whole to a third party. The last purchaser would be no more protected against fraud by the sale to the former purchaser of a particular pile than of part of the lumber, and there is no rule of law which defeats a completed honest sale by a subsequent sale to somebody else, whether the latter is honest or dishonest. But we are only concerned here with enforcing our own decisions, which were not hastily made, and which this Court has never declared subject to reconsideration. Any departure from them would amount to an *ex post facto* destruction of rights acquired under them.

Under the facts found, plaintiff's recovery should not have been allowed, and defendants should have judgment for the value of 100,000 feet of lumber or its return, with such damages as have accrued by the expenses of loading and carriage.

CHAMPLIN, C. J., LONG and GRANT, JJ. The foregoing opinion was prepared by our late associate. We concur in the opinion, and adopt it as our own.

Judgment is reversed, and new trial ordered.

MORSE, J., did not sit.