CHRISTIAN·YOCKEY v. JAMES NORN.

*Standing timber—Sale—Passing of title.*

101  193
116  653

Where a contract for the sale of standing timber provides for final payment of the purchase price when the timber is loaded upon the cars by the vendor, who agrees to cut and so deliver it to the purchaser, the title does not pass until such delivery is made.

Appeal from Oscoda. (Simpson, J.) Argued April 27, 1894. Decided June 16, 1894.

Bill to restrain the removal of certain timber. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*C. R. Henry* (*M. J. Connine* and *C. H. Gage*, of counsel), for complainant.

*McDonell & Hall*, for defendant.

HOOKER, J.    One Clark, being the owner of land on sections 11, 25, and 33, township 29 N. of range 1 W., made a writing, signed by himself and the defendant, of which a copy follows:

101 MICH.—13.

" This agreement, made the 5th day of December, 1891, by and between Dayton Clark, of Grayling, Crawford county, Mich., of the first part, and James Norn, of Standish, Arenac county, Mich., of the second part, witnesseth:

" That for and in consideration of the sum of $6.00 per M. feet the party of the first part agrees to sell, and hereby does sell, also to cut, skid, and put on cars for said second party, all the timber except 200 M., which the price is to be $8.00 per M. feet, on the following described land, viz.: Entire section 33; also entire section 11; also the north half, and the south half of the south half, of section 25,—all in town 29 north of range 1 west.

. " Said second party agrees to pay said first party the sum of $1.00 per M. for all timber as fast as skidded, and roads made to each skidway, on section 33 and 25; and for all timber on section 11, as fast as skidded and roads made to each skidway, $1.50 per M. feet. Also the second party agrees to pay for said timber $1.50 as fast as banked on said railroad, balance to be paid when said timber is all loaded on cars, and scale to be determined by the Michigan Central Railroad Company; and, at any time when either first party or second party is dissatisfied with said scale, another scaler may be agreed on, to be selected by both parties, but all timber scaled by Michigan Central, till such scaler is selected, shall be final.

" At the signing of this contract there is now paid on said work (which receipt is hereby acknowledged) $3,391.62, which we set our hand the day and year first above written.

" DAYTON D. CLARK.<br>
" JAMES NORN."

This was followed a few days later by another agreement, to wit:

" This agreement, made this 14th day of December, 1891. Dayton Clark, of Grayling, sells to James Norn, of Standish, all the pine and Norway timber on the S. ½ of N. E. ¼, S. W. ¼, and W. ½ of S. E. ¼ of section 6, in town 28 north of range 1 east. Said Clark is to put said timber on cars for $6.00 per M. feet. Payments to be as follows: One dollar per M. when on the track ready to put on cars, and balance when all loaded on cars. Said Clark is to leave said timber, or as much of some

other timber, till the 24th day of June, if said Norn cannot take it sooner. Said Norn is to advance said Clark with $3,200, which said Clark is to pay interest for the advance at rate of 7 per cent. for 4 months. Logs to be cut as directed by Norn. Scaling to be done by railroad company, if satisfactory, and, if not satisfactory, another scaler to be selected, agreeable to both parties.

" Whereof the parties set their hands the day first above written.

"DAYTON D. CLARK.
"JAMES NORN."

·Early in March, 1892, Clark, being embarrassed financially, deeded the land in controversy, viz., that on section 6, by quitclaim deed, and a few days later by warranty deed, to Mrs. Elliott, without consideration, for the purpose of protecting it from his creditors. At Clark's suggestion, one Peter Shien, a land agent, attempted to sell the parcel on section 6 to two or more different persons, and finally closed a sale to the complainant. Defendant having asserted a title to the timber, and threatened to remove the same, this bill was filed to restrain him from doing so, and to settle the rights of the parties.

An examination of the evidence convinces us that the circuit judge was right in holding that the defendant was not in possession of the premises at the time of complainant's purchase, and that the complainant had no actual notice, personally, of defendant's interest in the timber or premises. It seems as clear that Shien had such notice before the consideration was paid by the complainant. The questions involved are:

1. Did the agreement of December 14 convey to the defendant the title to the timber?

2. If it did, was complainant bound by notice to Shien?

The agreement of December 14 used the expression, " Dayton Clark sells to James Norn all the pine and Norway timber " on the premises. Standing alone, this is a plain and explicit sale, by which the title to the timber

standing and fallen would pass. This contract does not, in express terms, include a license to enter and remove the timber; on the contrary, it expressly provides that Clark shall deliver it elsewhere. This tends to negative a license to enter and remove the timber, which might otherwise be implied. *Nettleton v. Sikes*, 8 Metc. 34; *Wood v. Manley*, 11 Adol. & E. 34; *Parsons v. Camp*, 11 Conn. 525; *White v. Elwell*, 48 Me. 360; *Anthony v. Haneys*, 8 Bing. 186; *Williams v. Morris*, 8 Mees. & W. 488; *McLeod v. Jones*, 105 Mass. 403, 406; *Boults v. Mitchell*, 15 Penn. St. 371. Again, the agreement does not state a consideration for the timber alone, but upon its delivery upon the cars. This necessarily includes the cutting, hauling, and loading. The payment of $3,200 was not treated as payment down upon a purchase, but was called an "advancement," and 7 per cent. interest was stipulated for a period of four months. Furthermore, Norn did not treat this as the purchase price of the timber. He charged the sum to Clark, with whom he had other dealings, the account of which was not kept separate from this. He paid orders from Clark given to Clark's men for lumbering upon section 6 and the other sections, and charged them up indiscriminately. Against these charges was credited the amount of lumber received from various sources, all at $6 per 1,000 feet. Norn testifies that the money was paid as an advancement to enable Clark to keep at work, he being lumbering and selling logs to Norn. Clark wanted more timber to cut, and obtained this money to pay for the land; Norn first getting a draft payable to Pack, from whom Clark got his title. The deed was in the hands of Mr. Staley, and Pack returned the draft to Norn, to be made payable to Staley, which was done, and Mr. Clark received his deed at that time from Staley. The contract of December 14 was the fourth one between Clark and Norn, and matters were unsettled between them.

The contract was not witnessed or acknowledged, and therefore could not be recorded. Norn was not to enter into possession of the premises. Under the circumstances, Clark could hardly have escaped bearing the loss had the timber been destroyed by fire before delivery. Upon the whole record we conclude that it was not the intention of the parties that title to the timber should pass by the contract of December 14 until delivery upon the cars, and it would follow that the complainant was entitled to relief. It is therefore unnecessary to discuss the question of notice.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.