EDWARD HINES LUMBER CO. v. TOWNSHIP OF WELLS.[1]

TAXATION—PERSONAL PROPERTY—OWNERSHIP—SALES.

> Where, pursuant to a contract of sale of lumber to be delivered on dock, the lumber is piled on docks ready for shipment, its amount and quality estimated by the parties, it is marked as the purchaser's property, 90 per cent. of the estimated purchase price is paid and the insurance policies assigned, the lumber is the property of the purchaser and properly assessable to him for taxation.

Error to Delta; Stone, J. Submitted November 14, 1905. (Docket No. 129.) Decided December 22, 1905.

Assumpsit by the Edward Hines Lumber Company against the township of Wells for taxes paid under protest. There was judgment for plaintiff, and defendant brings error. Reversed, and judgment entered for defendant.

Plaintiff was assessed upon the tax roll of the defendant in 1900 for lumber valued at $30,000. It paid the tax under protest and brought this suit to recover it, claiming that it had not at the time the title to the lumber, and that therefore it was improperly assessed to it. The facts were stipulated, and, so far as material, are as follows: On March 22, 1899, the I. Stephenson Company wrote the following letter to the plaintiff:

"We will sell you the cut from our Escanaba logs to to be manufactured by us for the coming season of 1899 at the following prices, on our dock at our steam mill, mouth of the Escanaba river. [Then follow the kinds of lumber, price, etc.]

"We to pile the stock about 90 days. We to insure the stock three months, and any insurance running longer than three months you are to pay.

"Terms the same as the season of 1898 which are as follows: Two per cent. discount for cash when stock is

---

[1]Rehearing denied June 4, 1906.

shipped and invoice rendered with inspector's certificate attached.

"In the fall of the year all stock in pile 90 days and not shipped, to be estimated and an advance of 90 per cent. of its value to be made on same in cash.

"The vessels Schr. Bertha Barnes and City of Chicago to carry the lumber at the going rate of freight. You to unload vessels in Chicago at your dock, promptly, at $75.00 per cargo.

"Shipments subject to inspection by George F. Gilbert, whose inspection shall be final. Each to pay one-half of the fees. * * *

"What rejected culls and skoots we make are to be piled, and if more than we want for our Escanaba yard, you are to have them at the market price."

This letter was accepted. Plaintiff had bought the product of defendant's mill on similar terms the season before. A quantity of this lumber, manufactured during September and October, was carried over under the provisions of the contract. Representatives of both parties examined and counted the courses in the piles of lumber, and estimated and marked them "Edward Hines Lumber Co." This estimate was in writing, and stated the different kinds of lumber, amounting in value to $36,033.25. February 12th plaintiff paid defendant 90 per cent. of this estimated value, less the 2 per cent. for cash. In the letter accompanying the check plaintiff wrote: "Enclosed we hand you our check in payment of 90 per cent. of the lumber, being carried over at Flat Rock." On February 26th the I. Stephenson Company mailed to plaintiff the insurance policies, accompanied by a statement showing the amount of premiums under the provisions of the contract. Plaintiff paid the amount of these premiums a few days thereafter. Plaintiff did not commence to remove the lumber upon the opening of navigation in the spring of 1900, and on April 20th the I. Stephenson Company wrote plaintiff to make shipments as soon as possible. Plaintiff promised to expedite shipments. The lumber was not shipped on the boats named in the contract, which were owned by the I. Stephenson Company, but

by the plaintiff by boats chartered or owned by it. The
I. Stephenson Company had nothing to do with the load-
ing or shipping the lumber. Plaintiff sent boats for the
lumber when it suited its convenience. During the season
of 1899 the I. Stephenson Company used some hemlock
lumber in the construction of a bridge. It was not a part
of that carried over. Upon learning this the plaintiff
claimed the hemlock timber so used, and the I. Stephen-
son Company paid for it. The plaintiff not having re-
moved this lumber when the time for assessing property
came, it was, as above stated, assessed to the plaintiff.
From the stipulated facts the court found that it was the
intention of the parties that the title should not pass, and
that the title had not passed, and entered judgment for
plaintiff.

*F. D. Mead*, for appellant.
*Ball & Ball*, for appellee.

GRANT, J. ( *after stating the facts* ). We think that
the learned circuit judge was in error in holding that this
case is ruled by *Grand Rapids Bark & Lumber Co.* v.
*Township of Inland*, 136 Mich. 121. In that case the
vendor agreed to sell lumber to be manufactured from
logs from his lands, and to manufacture into lumber
certain other logs which were to be purchased. The
delivery was to be made by the vendor on board the cars.
Lumber delivered direct from the saw onto the car was
to be a shilling less in price than that piled in the mill-
yard. There had been no inspection, estimate, or deliv-
ery. The contract was executory until the lumber was
delivered on the cars. In this case the lumber had been
piled upon the docks ready for shipment. The amount
and quality determined by examination and estimation by
the parties. It was set apart and marked as the property
of the plaintiff. It was under its control, and it could
ship when it chose. Ninety per cent. of the purchase
price had been paid. It had taken an assignment of the
policies and paid for the insurance. The vendor had per-

formed everything required of it by the contract, and, as this court said in *Whitcomb* v. *Whitney*, 24 Mich. 486:

"Everything now depended upon the action of the defendant [the vendee] which might be expedited or delayed as should suit his own convenience."

For its own accommodation plaintiff left the property upon the dock after the opening of navigation, instead of removing it, as requested by the vendor. It is true that the exact amount might be varied by the inspection in Chicago, but this is not conclusive of the question of title. The retention of the 10 per cent. of the purchase price was to cover any inaccuracy in the amount of the estimate made. The case falls within *Byles* v. *Colier*, 54 Mich. 1, in which numerous cases are cited, and *Lingham* v. *Eggleston*, 27 Mich. 324, is distinguished from *Byles* v. *Colier*. While actual delivery is not essential to the passage of title (*Byles* v. *Colier*), we are of the opinion that the delivery contemplated by the contract was made, and the lumber was appropriated to the contract. *McElwee* v. *Lumber Co.*, 69 Fed. 302.

The question put by Justice COOLEY in *Whitcomb* v. *Whitney* is applicable here:

"Suppose the defendant's vessel had called at the dock for it [the lumber]; could plaintiff have refused to allow him to take the lumber away and maintained replevin for it if he had done so?"

The reasoning of the learned justice in reply to the question is equally applicable here. See, also, *Jenkinson* v. *Monroe Bros. & Co.*, 61 Mich. 454. The money which the I. Stephenson Company had received in payment of this lumber would have been subject to assessment for taxation to that company if in its possession at the time provided by law for the assessment of the property. We think it clear that the parties intended title to pass, and that it had passed.

Judgment reversed, and judgment entered in this court for defendant, with costs of both courts.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.