BROWN LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12703. Promulgated December 20, 1927.

*Frank E. Seidman, C. P. A.,* and *Jacob S. Seidman, Esq.,* for the petitioner.

*Orris Bennett, Esq.,* for the respondent.

OPINION.

SIEFKIN: Four errors were assigned by petitioner—that respondent erred (a) in refusing to allow losses claimed by petitioner on account of two purchases of lumber made in 1920, which, at the close of the year 1920, had a fair market value less than cost, (b) in not computing the tax under the special assessment provisions, (c) in not including certain 1917 expenditures, less depreciation to January 1, 1920, for machinery in invested capital for 1920, and (d) in failing

to allow depreciation on such machinery. Under stipulation of the parties the adjustments on the last two items are agreed to and there remain for our consideration only the first two items.

On the first issue only one question remains to be determined— whether title to the lumber covered by the contracts had passed to petitioner on December 31, 1920. The other factors involved, as the cost of the lumber and its fair market value on December 31, 1920, were stipulated.

The contracts were entered into in the State of Michigan and must be construed under the laws of that State. The Uniform Sales Act is in force in Michigan. Sections 11849 and 11850, Comp. Laws Mich., 1915, so far as pertinent, are as follows:

11849. Sec. 18. Property in specific goods passes when parties so intend.

(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

11850. Sec. 19. Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

Rule 4 (1). Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon.

The respondent urges that both of the contracts in question, being f. o. b. contracts, fall within the purview of Rule 5 above quoted. Williston on Sales, vol. 1, p. 602, in regard to the question as to when property passes under f. o. b. contracts, says:

As it is a necessary implication in F. O. B. contracts that the buyer is to be at all expense in regard to the goods after the time when they are delivered free on board, the presumption follows that the property passes to the buyer at that time, and not before, though the goods are brought to the point of shipment and are ready for loading.

This statement is supported by decisions of the Supreme Court of Michigan both before and after the enactment of the provisions of the Uniform Sales Act. In *Detroit Southern R. R. Co.* v. *Malcolm-*

*son*, 107 N. W. 915, where the contract was to furnish all coal needed by the second party until a specified time at certain prices, f. o. b. Michigan Central R. R., and where it was argued that f. o. b. was only a factor in the selling price, the court said:

> * * * " Free on board " has acquired a settled judicial meaning. *Vogt* v. *Schienebeck* (Wis.) 100 N. W. 820, 67 L. R. A. 756.

In the *Vogt* case cited, the contract was as follows:

> Received of Paul Vogt of Milwaukee, Wis., Five ($5) dollars on account of sale to him by me, made this 15th day of November, 1902, of 100,000 feet more or less of pine one inch lumber at Eight Dollars per 1,000 feet common or better now at Stadler's Mill, f. o. b. to be delivered upon demand within two months from above date. Inspection fees to be paid by both of us.

In discussing the authorities applicable to this contract, the court said they generally hold—

> that a sale F. O. B. cars means that the subject of the sale is to be placed on the cars for shipment without any expense or act on the part of the buyer and that as soon as so placed, the title is to pass absolutely to the buyer * * *.

In a later case, *Dow Chemical Co.* v. *Detroit Chemical Works*, 208 Mich. 157; 175 N. W. 269, the Michigan Supreme Court restates the rule thus approved by it in *Detroit Southern R. R. Co.* v. *Malcolmson*, as follows:

> The general rule is that title passes when the vendor has fully performed in the appropriation and delivery of the goods to the vendee, and delivery to a public carrier for transportation constitutes delivery to the vendee. There may, of course, be stipulations in the contract or circumstances attending its performance which indicate a contrary intention. *Wagar* v. *Railroad Co.*, 79 Mich. 648, 44 N. W. 1113 (wherein a bill of sale was given at the time of contracting). This rule is, in effect, incorporated in the sections of the Uniform Sales Act * * *.

Decisions such as the foregoing do not purport to state a fixed rule of law, but merely discuss a presumption designed to aid in ascertaining by inference the intent of the parties as to when title should pass.

It remains for us to examine the terms of the contract, the conduct of the parties, usages of trade and the circumstances attending the several contracts to determine whether, as urged by petitioner, the intentions of the parties thereto were shown to be that title should pass at some time other than when the subject matter was loaded on the cars. For this purpose the contracts in question will be separately considered.

With respect to the Chesbrough contract the petitioner, apparently, would have us distinguish between the lumber in pile at the time the contract was entered into and that to be later cut. As to that part in pile petitioner calls attention to the use of the words " buys " and " sells " which it is contended indicate a sale rather than an agreement

to sell. In support of its position, petitioner cites *Richardson Lumber Co.* v. *Hoey*, 219 Mich. 643, wherein the contract was to "sell you the cedar ties we now have on the Boyce property * * * at 42 cents on the ground as they are." However, the words used there leave little doubt that the sale was made outright without any further act required of the seller, the only thing remaining to be done was to check the estimate given in the contract by an actual count of the ties. The ties in that case and the lumber in pile in the instant case may be said to have been in a deliverable state. However, no delivery other than the seller's allowing the buyer to take the goods was contemplated in the cited case, while in the case at bar, the delivery required of the seller to complete the terms of the contract was the actual loading on the cars. See Williston on Sales vol. 1, p. 591. This distinction will be again referred to below in connection with the consideration of the contract as a whole.

Petitioner's contention that the contract should be divided and that the title to the lumber in pile passed when the contract was entered into in accordance with the intention expressed by the words "buys" and "sells" must be rejected. Had the letters f. o. b. not been used respecting this feature of the contract there might be force to the contention. See *Yockey* v. *Noon*, 101 Mich. 193; 60 N. W. 685, in which delivery required of the seller outweighed the word "sells." See also Williston on Sales, vol. 1, p. 527, where it is pointed out that little reliance can be placed on such terms, as they are constantly used to mean "contract to sell or contract to buy." Reference may likewise be made to the contract in the *Vogt* case, *supra*, where the word "sale" is disregarded. Furthermore, it would be idle for us to consider the several parts of the contract separately, as only the total value of the lumber in pile at Thompson at the close of the year is in evidence, no attempt having been made to value the portions of such lumber covered by the respective contract divisions contended for. Accordingly, if we can not find it the intention of the parties to pass title to all such lumber, we are in no position to disturb the respondent's determination.

With respect to the lumber covered by the whole contract, several of the facts relied upon by petitioner may be briefly dismissed. Among these are the facts that by December 31 of the year in question the lumber was estimated and identified by being marked as sold to petitioner, whose representative had inspected it; that the petitioner was required by the contract to furnish the cars for shipments; and that payment made in January, 1921, was made in advance of shipment. The fact that the quantity and quality of the lumber in question was ascertained by an estimate and that the lumber was identified seems not to be an affirmative indication that title is intended to pass. On the contrary, the cases cited by petitioner upon

the point, as well as other cases examined, treat such ascertainment and identification as a condition precedent to the passage of title, but not as evidence of intention to pass title unless they are the last act required of the seller to put the goods in a deliverable state constituting an appropriation of goods to the contract. In cases where they are the last acts, delivery being mere acquiescence in the buyer taking the goods, title passes by such appropriation as in *Richardson Lumber Co.* v. *Hoey, supra.* See also *Lingham* v. *Eggleston,* 27 Mich. 324. Those cases are not analagous to the f. o. b. contract under consideration, the terms of which require not merely a formal delivery but a substantial affirmative act of delivery.

Nor does the fact that petitioner was required to furnish cars for shipment in any wise detract from the force of the f. o. b. provision. To our mind this provision merely permits the seller to consider petitioner's failure to provide cars as a breach of contract leaving the seller free to make other disposition of his product. There is nothing in the provision indicating the seller's intent to pass title or petitioner's intent to waive f. o. b. delivery. In the cases cited and relied upon by petitioner in this regard, the buyer could load and ship the goods at will without consulting the seller. We are not impressed by the contention that payment was made prior to shipment. It is true that payment made in advance is evidence, perhaps not so strong as delivery, but entitled to considerable weight, of the intent to pass title. Williston on Sales, vol. 1, p. 452; *Grand Rapids Bark & Lumber Co.* v. *Inland Township,* 142 Mich. 980; *Edward Hines Lumber Co.* v. *Wells Township,* 142 Mich. 366; 105 N. W. 872. However, since payment was not actually made until after the close of the year in question, we are unable to perceive the pertinency of petitioner's contention except as such payment may reflect upon the intent existing prior to the close of the year.

We are thus led to the conclusion that it was not the intention to pass title to the lumber in the yard at Thompson unless the correspondence between the parties in the closing days of the year evidence such intention notwithstanding the contract requirement that the seller load the lumber on board cars. Respondent urges that said letters were written for income-tax purposes, and should, therefore, be disregarded. This position disregards the fact that men are often led to legitimate action by income-tax considerations. We do not understand the respondent's contention to be that fraudulent means of tax evasion was intended by the parties. Accordingly, it is not the motive but the effect of the correspondence that we must consider.

Does this correspondence show the intention of the parties to the contract to pass title? On December 23, Chesbrough wrote the petitioner indicating his desire that settlement be made for the lumber

in question so that proper entries could be made after the first of the year. Undoubtedly this indicated a desire to change the position of the parties with respect to the lumber within the short space of time left between the date the letter was written and time for closing and opening the books. Delivery of the lumber being then past due and a breach, if any, having already occurred, it seems the desired change in the status between the parties must be either action on the breach or completion of the sale. There is no evidence that action on the breach was in contemplation. On the contrary, the letter called upon petitioner to adjust a settlement in view of the approach of the end of the year. That a settlement was not expected as a condition to change of status is indicated by the provisions for credit in the contract itself and in the subsequent letter of December 29 in which Chesbrough submits a statement and asks payment though the adjustment of a settlement referred to in the former letter had not been made. The payment requested in advance of his completion of the contract in the later letter indicates at least willingness that title pass by way of completion of the sale for, as matters theretofore stood, Chesbrough, not having shipped, was not in a position to demand payment. When considered together with the letter of January 5, which refers to the lumber as belonging to petitioner, we think the letters of December 23 and 29 show an intent on the part of Chesbrough to pass title before the close of the year.

Petitioner's letter written in answer to Chesbrough's letter of December 23, clearly interprets the latter communication as expressing a desire on the part of Chesbrough to complete the sale before the close of the year. It is equally clear that petitioner wished the sale closed so that it might take the lumber into its inventory as of the close of the year. It seems apparent from this correspondence that both parties considered the contract one to sell rather than a completed sale and took the steps they thought necessary to make the sale complete.

Had the lumber been burned at any time after December 29 could the petitioner have denied his liability therefor? We think not. The presumption that the parties did not intend to pass title until there was an f. o. b. delivery must yield to the contrary intent expressed by the parties.

The contract between petitioner and the White Marble Lime Co. is in most respects similar to the contract above discussed. Substantially similar contentions, so far as applicable, were advanced by the parties hereto in support of their respective positions. It is unnecessary to further consider the arguments and restate our con-

clusions in detail. The principal distinction between the terms of the contract is in the terms of payment. The terms of the White Marble Lime Co. are not entirely clear in this regard. However, we construe the second sentence of the second paragraph of such contract to mean that settlement must be made when the lumber is estimated and the piles marked as sold to the petitioner if orders for shipment were not given by petitioner for shipment when the lumber was ready to be shipped. As the lumber in question was so estimated and marked up at the close of the year, we agree with petitioner that petitioner could have been billed for it at any time. But we can not agree with petitioner's contention that such a liability was the equivalent of payment, and as such, strongly indicative of the intent to pass title when that liability arose. We have recognized in our discussion of the other contract that payment before shipment is weighty evidence of intent to pass title before shipment. Such intent is an inference from the fact of advance payment. The inference the petitioner would have us draw has no such factual basis.

In this contract, as in the other one, the presumption of intent arising from the f. o. b. provision must govern, unless the correspondence taking place between the parties clearly indicates the contrary intent to pass title before the close of the year. Let it suffice to say upon this point that the letters from the White Marble Lime Co. were written after the close of the year in question. Any intent to pass title shown therein was expressed after the close of the year. That being true, we must reject petitioner's contention that the title to the lumber in pile covered by this contract passed to petitioner before the close of the year.

There remains the alternate contention that if the title is held not to pass, then an abnormal condition requiring special assessment exists. We think the contention without merit. Congress made provision for allowances in the event of losses by means of deductions in the year in which they were sustained, and in certain instances in other years. Having thus specifically granted deductions for losses in designated years, we can not ascribe to Congress an intent to permit taxpayers allowances under other and more general provisions for so-called losses not falling within the specified classes and in years other than those designated.

The deficiency will be recomputed in accordance with this opinion and the stipulation between the parties.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by Morris and Murdock.